FILED-USDC-NDTX-DA
'26 OCT 26 PM12:25
JJF

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

ANTONIO EDUARDO HUERTA SERNA, Movant, Pro Se
v.
UNITED STATES OF AMERICA, Respondent
Civil Action No. 3:26-CV-02624-K | Criminal No. 3:20-CR-00170-K(01)

# PRO SE MOVANT'S RESPONSE IN OPPOSITION TO THE GOVERNMENT'S MOTION TO DISMISS AND REQUEST FOR APPROPRIATE RELIEF

## Use of Generative Artificial Intelligence

Generative artificial intelligence was used to assist in preparing this brief.

## INTRODUCTION

The Government seeks dismissal of Movant's 28 U.S.C. § 2255 motion as untimely (Civil ECF No. 6), notwithstanding the Court's August 10, 2026 direction for a substantive answer (ECF No. 4). At least as to the already-pleaded Ground Three—counsel's failure to file a requested direct appeal—the limitations defense turns on three mutually reinforcing bodies of evidence: (1) Movant's three direct inquiries to counsel's firm and its repeated affirmative assurances that the appeal was progressing; (2) three signed eyewitness affidavits corroborating his sentencing-day appeal request and counsel's promise; and (3) contemporaneous medical records documenting combat-related PTSD and treatment, relevant to whether he could reasonably have discovered the omission earlier. The Court should deny dismissal or permit appropriate factual development before resolving the disputed diligence and tolling issues.

## I. THE GOVERNMENT DID NOT PROVIDE THE RESPONSE DIRECTED BY THE COURT

In ECF No. 4, the Court directed a response by October 9, 2026 answering the § 2255 allegations in substance under Rule 5(b), and instructed that the response not be captioned as a motion to dismiss or other judgment-as-a-matter-of-law motion. The Government nevertheless filed a motion to dismiss on October 7, 2026 (ECF No. 6). Movant asks the Court to enforce its

August 10 order and require a substantive response. Movant recognizes, however, that the Court may independently address a limitations defense; the Government's choice of caption does not itself establish entitlement to § 2255 relief.

## II. TWO DISTINCT PATHS DEFEAT PREMATURE DISMISSAL OF GROUND THREE

The Government calculates the ordinary one-year period under § 2255(f)(1) as ending May 6, 2026. For Ground Three, § 2255(f)(4) separately starts the period when the facts supporting the claim could have been discovered through due diligence. The relevant question is when a reasonably diligent person, after counsel's affirmative assurances, could have discovered that no appeal had been filed. *United States v. Rodriguez*, 858 F.3d 960, 962–64 (5th Cir. 2017), affirmed dismissal where a prisoner assumed an appeal was pending but failed to demonstrate follow-up diligence. Critically, *Rodriguez* expressly declined to decide the distinct situation in which counsel actually misleads a client into believing appellate activity is occurring. *Id.* at 963 n.5. Here, Movant identifies three direct inquiries and affirmative assurances that his appeal was progressing. Alternatively, equitable tolling requires reasonable diligence and an extraordinary circumstance that prevented timely filing. *Holland v. Florida*, 560 U.S. 631, 649 (2010); *United States v. Wynn*, 292 F.3d 226, 230–31 (5th Cir. 2002). Movant relies on affirmative misrepresentations and reasonable reliance, not ordinary attorney negligence.

## III. SWORN WITNESSES AND THREE FOLLOW-UP CALLS DISTINGUISH THIS CASE

Immediately after sentencing on April 22, 2025, Movant requested a direct appeal from sentencing attorney Lynette Byrd, who agreed to handle it. The signed eyewitness affidavits of Chalan Wyatt, Julia Diaz, and Maria Pendergrass corroborate the post-sentencing exchange. Wyatt states she moved within approximately five feet, heard Movant request an appeal, and heard Byrd respond that she would take care of the appeal, get back to him, and consider it done. Wyatt Aff. ¶¶ 9–13; Diaz Aff. ¶¶ 7–10; Pendergrass Aff. ¶¶ 7–9. These sworn statements support the underlying ineffective-assistance claim; the separate limitations issue requires

evaluation of Movant's subsequent diligence and reliance.

Movant telephoned Byrd's firm about his direct appeal on June 10, 2025, September 16, 2025, and January 7, 2026. On each call, firm personnel stated that the appeal was progressing. On January 7 he was told he owed money, which he disputed, but he was not told that no notice of appeal had been filed, that counsel had abandoned the appeal, or that work had stopped because of unpaid fees. His declaration describes these calls and the effect of his PTSD on his ability to investigate independently. App. 2–3, Serna Decl. ¶¶ 5–10.

In *Wynn*, the Fifth Circuit recognized that an attorney's deceptive representations about a pending postconviction filing can support equitable tolling where the prisoner reasonably relied on them; the court remanded for factual consideration. 292 F.3d at 230–31. *United States v. Cardenas*, 13 F.4th 380, 383–85 (5th Cir. 2021), affirmed denial of tolling for counsel's mistaken limitations advice, distinguishing deception in *Wynn* from ordinary error. Movant relies on repeated statements about the *status of an appeal purportedly underway*, rather than an incorrect legal estimate of the habeas deadline. The fact and reasonableness of his reliance remain for determination; the assertions do not establish tolling automatically. Movant discovered in July 2026 that no direct appeal had been filed and placed his § 2255 motion in prison mail on July 28, 2026. Criminal ECF No. 118 at 12 (PageID 968). The three inquiries are evidence of diligence, not a claim that contacting counsel alone always satisfies § 2255(f)(4).

## IV. CONTEMPORANEOUS PTSD EVIDENCE FURTHER EXPLAINS REASONABLE RELIANCE

Movant's combat-related PTSD, raised in the supporting memorandum to his original § 2255 motion as part of his sentencing-counsel claim, predated sentencing. Texas Panhandle Centers confirmed on April 14, 2026 that it provided PTSD-related services intermittently since 2023. App. 9. Dr. Bridgette L. Dilworth stated in a September 12, 2025 letter filed September 18, 2025 that she had begun treating Movant in June 2025. App. 4–5; Criminal ECF No. 90-2

(PageID 836–837). The criminal record therefore contained PTSD treatment evidence during the very year the Government disputes.

Dr. Dilworth's December 19, 2025 letter documents continuing combat-PTSD treatment, rigid isolation, family disconnection, and clinical concern about interruption of treatment. App. 6–7. Her March 27, 2026 letter details regression after interruption of equine therapy during home-incarceration restrictions, including increased stress, disrupted sleep, isolation-related symptoms, and emotional-regulation difficulties. App. 8. Both predate the Government's asserted May 6, 2026 deadline. The June 2, 2026 letter records continuing serious symptoms and medication-management concerns. App. 10–11. That later letter corroborates the course of care; its date alone is not offered as proof of impairment on any earlier date.

Movant's declaration explains the functional consequences of PTSD—impaired concentration, memory, sustained attention, and capacity to organize complex legal tasks or independently check federal appellate procedures. App. 2–3, Serna Decl. ¶¶ 1–4, 8–9. He did make three calls; his point is not complete incapacity, but that the law firm's repeated assurances, considered together with these documented limitations, explain his reliance instead of independently discovering that no appeal was pending. The combination supports a fact-specific inquiry into diligence, causation, and when he reasonably could have discovered the omission.

## V. THE HEARING STANDARD REQUIRES A SPECIFIC FACTUAL SHOWING

The hearing inquiry demands specific, reliable factual support, not unsupported generalizations. See *United States v. Reed*, 719 F.3d 369, 373 (5th Cir. 2013); *United States v. Harrison*, 910 F.3d 824, 826–27 (5th Cir. 2018). *Fisher v. Johnson*, 174 F.3d 710, 715 (5th Cir. 1999), recognizes that mental incapacity can sometimes be relevant to equitable tolling but denied relief where diligence and causal timing were insufficient. In unpublished *United States v. Valles*, No. 19-50343, slip op. at 3–5 (5th Cir. Jan. 18, 2023), the majority affirmed denial of

a hearing where the prisoner offered conclusory mental-health allegations and failed to explain an approximately eight-month post-arrest delay. Judge Dennis dissented; his view was not the court's holding. Here, Movant relies instead on three identified call dates, specific assurances, a sworn personal declaration, three eyewitness affidavits, and contemporaneous treatment records. Those materials should be evaluated under the majority's stated standard, without treating a PTSD diagnosis alone as automatic tolling.

## VI. CONSIDERATION OF THE EXISTING CLAIM AND APPROPRIATE FACT DEVELOPMENT

PTSD is not asserted as a newly raised standalone condition or a new ineffective-assistance claim: Ground Three of the original § 2255 motion alleges that counsel failed to file his requested appeal. Criminal ECF No. 118 at 7 (PageID 963). The three inquiries and PTSD evidence are offered to answer the Government's limitations defense to that already-pleaded ground, not to assert an additional § 2255 claim. The September 2025 Dilworth letter is already in the criminal record. Movant asks the Court to assess the existing claim and the disputed timeliness issues on the record presented, including the relevant identified supporting materials.

When counsel disregards an express instruction to appeal, deficient performance and presumed prejudice may support restoration of appellate rights even if an appeal waiver exists. *Roe v. Flores-Ortega*, 528 U.S. 470, 477, 483–86 (2000); *United States v. Tapp*, 491 F.3d 263, 265–66 (5th Cir. 2007); *Garza v. Idaho*, 586 U.S. 232, 238–42 (2019). In *Tapp*, the Fifth Circuit ordered a hearing to determine whether an appeal was requested, notwithstanding an appeal waiver; that case supports the merits of Ground Three but does not dispense with a timeliness showing. If Ground Three is timely and established, the remedy may be addressed under *United States v. West*, 240 F.3d 456, 459–62 (5th Cir. 2001), without prejudging other § 2255 claims.

## CONCLUSION

Movant respectfully requests that the Court: (1) deny or strike the Government's motion to dismiss (ECF No. 6) and require the substantive answer ordered by ECF No. 4; (2) alternatively decline to dismiss Ground Three without assessing the three follow-up calls, the three signed eyewitness affidavits, the documented combat-related PTSD and its functional effects, and the reasonable reliance on affirmative assurances, under § 2255(f)(4) and equitable tolling; (3) consider the supporting declaration, identified medical evidence, and the September 2025 medical letter already filed in the criminal docket as they bear on the Government's limitations defense; (4) conduct an evidentiary hearing if material factual disputes require it; (5) preserve remaining grounds for disposition under applicable law; and (6) grant all other just relief.

Respectfully submitted,

Tony E H. Serna

Antonio Eduardo Huerta Serna, Movant Pro Se
BOP Register No. 04135-509
FCI Forrest City Satellite Camp
P.O. Box 8000, Forrest City, AR 72336
Date: October 23, 2026

## CERTIFICATE OF SERVICE BY DESIGNATED MAILER

I, Julia L. Huerta, certify that on Oct 26, 2026, I placed an identical copy of this response and the supporting appendix, postage prepaid, in United States mail addressed to Lauren C. Murphree, Assistant United States Attorney, U.S. Attorney's Office, 1205 Texas Avenue, Suite 700, Lubbock, TX 79401-4002. I make this statement only if I personally performed that mailing.

Signature of person who mailed prosecutor's copy: [signature]

Date: Oct. 26, 2026

APPENDIX TO PRO SE MOVANT'S RESPONSE IN OPPOSITION TO GOVERNMENT'S MOTION TO DISMISS

Civil No. 3:26-CV-02624-K | Criminal No. 3:20-CR-00170-K(01)

## APPENDIX INDEX

App. 1 — Appendix index

App. 2–3 — Proposed updated declaration of Antonio Eduardo Huerta Serna (signature required)

App. 4–5 — Dr. Dilworth, September 12, 2025 (Criminal ECF No. 90-2)

App. 6–7 — Dr. Dilworth, December 19, 2025

App. 8 — Dr. Dilworth, March 27, 2026

App. 9 — Texas Panhandle Centers, April 14, 2026

App. 10–11 — Dr. Dilworth, June 2, 2026

App. 12-14 - Affidavit of Chalan Wyatt (signed and notarized)

App. 15-16 - Affidavit of Julia Diaz (signed and notarized)

App. 17-18 - Affidavit of Maria Pendergrass (signed and notarized)

## DECLARATION OF ANTONIO EDUARDO HUERTA SERNA

28 U.S.C. § 1746

I, Antonio Eduardo Huerta Serna, declare the following based upon my personal knowledge:

1. My combat-related PTSD existed before my April 22, 2025 sentencing. Texas Panhandle Centers provided PTSD-related services intermittently beginning in 2023, and I began treatment with Dr. Bridgette Dilworth in June 2025.

2. From sentencing through at least May 2026 I experienced significant PTSD symptoms affecting my concentration, memory, ability to sustain attention, sleep, and capacity to organize and independently manage complicated legal tasks.

3. My treatment and medication-management arrangements changed over time, including interruptions to treatment that made symptoms worse. I do not claim to have taken any one medication without interruption for the entire period.

4. My symptoms made it significantly harder to track complex legal matters, understand and independently investigate appellate procedure, or recognize when I needed to search the federal court docket rather than depend upon my attorney's firm.

5. Immediately after sentencing on April 22, 2025 I asked my sentencing attorney, Lynette Byrd, to file a direct appeal. She told me she would handle it and get back to me.

6. I personally called my sentencing attorney's firm about my direct appeal on June 10, 2025, September 16, 2025, and January 7, 2026. On each call a firm representative assured me that the appeal was progressing.

7. On the January 7, 2026 call I also was told I owed fees, which I disputed, but I was not told no notice of appeal was filed, or that an appeal had been abandoned or was stopped because of any unpaid fees.

8. I relied on the firm's repeated assurances. No one told me that the appeal was not pending. Because of those reassurances and my significant PTSD-related limitations, I did not independently discover the missing appeal earlier.

9. I was able to place the three calls. Making those inquiries reflected my effort to protect my rights, but did not mean I could independently manage complicated post-conviction filing rules and court-docket investigation.

10. I learned in July 2026 that no direct appeal had been filed. I thereafter prepared my § 2255 motion, which I certified I placed in the prison mail system on July 28, 2026.

11. The medical exhibits corroborate my ongoing PTSD treatment. I submit this declaration to explain specifically how my symptoms and the firm's affirmative reassurances together affected my diligence and the time of discovery, not to assert total legal incapacity.

12. This declaration supports only the existing Ground Three, alleging failure to file my requested direct appeal; I do not assert a new ground for relief.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 23, 2026, 2026.

Antonio Eduardo Huerta Serna

BOP Register No. 04135-509

Exhibit B
USA v. Antonio Serna
Case No. 3:20-CR-00170-(1)
Dr. Bridgette L. Dilworth, DPC, LPC-S Letter

**Dr. Bridgette L. Dilworth, DPC, LPC-S**
Geador Family Counseling Center, PLLC
1901 Medi Park Dr. Suite 136a
Amarillo, TX 79106
Phone: (281) 301-1004
Email: Bridgette.dilworth@geadorfamilycounseling.com
Website: geadorcounseling.com

**September 12, 2025**

**Honorable Judge Barbara M. G. Lynn**
United States District Court for the Northern District of Texas
1100 Commerce Street, Room 1504
Dallas, TX 75242

**RE: Antonio Serna – Recommendation for Additional Continuation of Mental Health Treatment**

Dear Judge Lynn,

I am writing on behalf of my patient, Mr. Antonio Serna, whom I continue to treat for chronic Post-Traumatic Stress Disorder (PTSD) and Major Depressive Disorder, both stemming from his combat service in the United States Marine Corps and Army.

Since the Court's prior approval of an extension, Mr. Serna has demonstrated measurable clinical progress. His PTSD symptoms have begun to lessen in intensity, particularly through the integration of family participation in therapy. This involvement has strengthened his support system, fostered healthier family dynamics, and provided greater stability at home. These improvements are encouraging; however, Mr. Serna remains in a fragile stage of recovery that requires uninterrupted continuation of treatment.

At present, Mr. Serna is enrolled in a comprehensive treatment plan consisting of weekly trauma-focused psychotherapy, equine-assisted therapy, group counseling, and family-based interventions. These evidence-based modalities are tailored specifically for combat-related PTSD and are designed to strengthen emotional resilience, reduce symptom severity, and prevent relapse. Prematurely interrupting this therapeutic process would significantly increase the risk of regression and compromise the gains he has made.

In addition to counseling, Mr. Serna continues to receive psychiatric medication management through the Texas Panhandle Center under the supervision of Dr. Laura Settlage. The coordination between psychotherapy and psychiatric care has been critical in stabilizing his condition, managing depressive symptoms, and preventing setbacks. This combined approach remains essential to his recovery.

While improvement is evident, Mr. Serna continues to struggle with hypervigilance, sleep disruption, and intrusive combat-related memories. Although less severe than before, these symptoms remain clinically significant. In my professional judgment, granting Mr. Serna an additional ninety (90) days of continued treatment is medically necessary to further consolidate his progress, strengthen coping strategies, and prepare him for a safe and stable transition into the correctional environment.

I respectfully urge the Court to permit Mr. Serna to complete this critical phase of treatment. The additional time will substantially reduce his risk of psychiatric destabilization, protect his long-term mental health, and ensure that the progress achieved thus far is preserved.

I deeply appreciate the Court's consideration of this request and remain available to provide further documentation or testimony if needed.

Respectfully,

**Dr. Bridgette L. Dilworth, DPC, LPC-S**
Licensed Professional Counselor – Supervisor
Geador Family Counseling Center, PLLC

**Dr. Bridgette L. Dilworth, DPC, LPC-S**
Geador Family Counseling Center, PLLC
1901 Medi Park Dr., Suite 136a
Amarillo, TX 79106
Phone: (281) 301-1004
Email: Bridgette.dilworth@geadorfamilycounseling.com
Website: geadorcounseling.com

**December 19, 2025**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

**Re: Antonio Serna** – Continuation of Mental Health Treatment

To the Honorable Court:

I am a licensed mental health professional currently treating Mr. Antonio Serna. Mr. Serna is engaged in ongoing therapeutic treatment related to combat-related Post-Traumatic Stress Disorder (PTSD) arising from many years of military service.

Over the past ninety (90) days, treatment has focused on addressing secondary effects commonly associated with combat-related PTSD, including family disconnection, grief, and social isolation. During this period, Mr. Serna has been consistent and reliable in attending scheduled therapy sessions and has made meaningful clinical progress, including improved emotional regulation and strengthened family engagement.

Mr. Serna has also participated in adjunct equine-assisted therapy as part of his treatment plan. This modality is commonly used in cases involving military combat trauma to support regulation, trust-building, and trauma processing, and may help shorten the overall duration of treatment when used alongside traditional therapy.

While this progress is encouraging, Mr. Serna remains in a clinically sensitive and transitional stage of recovery that requires uninterrupted continuation of treatment to prevent regression.

The next ninety (90) days of treatment represent a clinically significant phase of care. During this period, therapy will focus on processing deeper combat-related traumatic experiences that

underlie Mr. Serna's PTSD symptoms. These issues require careful, structured, and continuous therapeutic work. In my professional judgment, interruption of treatment at this stage would materially increase the risk of regression and undermine the progress that has already been achieved.

Allowing this next phase of treatment to proceed without disruption is medically necessary to consolidate therapeutic gains and to prepare Mr. Serna for a safe and stable transition into the Bureau of Prisons environment.

I provide this letter in my professional capacity and in good faith to address the clinical considerations described above. I do not offer opinions on legal matters beyond these medical considerations.

Respectfully submitted,

**Dr. Bridgette L. Dilworth, DPC, LPC-S**
Licensed Professional Counselor – Supervisor
Geador Family Counseling Center, PLLC

**Dr. Bridgette Dilworth, DPC.**
Licensed Professional Counselor
Geador Family Counseling Center, PLLC
1901 Medi Park Dr. Amarillo, TX 79106
bridgette.dilworth@geadorfamilycounseling.com

**Date:** Friday, March 27, 2026

**Re: Antonio Serna – Mental Health Treatment and Clinical Status (Combat-Related PTSD)**

To Whom It May Concern,

I am a Licensed Professional Counselor and have been providing mental health treatment to Mr. Antonio Serna since June 2025. Mr. Serna is currently under my care for treatment related to Post-Traumatic Stress Disorder (PTSD) associated with prior military combat service.

Mr. Serna's diagnosis involves trauma-related symptoms consistent with combat-related PTSD, including anxiety, hypervigilance, stress response, sleep disturbance, intrusive thoughts, emotional dysregulation, and trauma-related psychological symptoms. Treatment has focused on trauma processing, emotional regulation, coping strategies, and psychological stabilization.

Mr. Serna experienced an interruption in Equine therapy for approximately two months due to restrictions related to home confinement and limited ability to attend treatment sessions. During this interruption in treatment, Mr. Serna experienced a regression in therapeutic progress and an increase in PTSD-related symptoms, including increased stress, isolation-related symptoms, sleep disturbance, and difficulty with emotional regulation. Following the interruption, treatment resumed and we are currently working on stabilization and re-establishing therapeutic progress that was impacted during the interruption in treatment.

At this time, Mr. Serna is in a stabilization phase of treatment. In my clinical opinion, individuals diagnosed with combat-related PTSD who experience a regression in treatment progress require a period of stabilization and continuity of care before undergoing major life transitions. Significant life stressors and major environmental changes during a period of psychological instability can increase the risk of worsening PTSD symptoms, emotional instability, and psychological deterioration.

From a clinical standpoint, continuity of care, stabilization, and continued therapy prior to incarceration would be beneficial for Mr. Serna's mental health and psychological stability, and would assist with his adjustment to incarceration and management of PTSD-related symptoms in a structured environment.

This letter is provided for informational purposes regarding Mr. Serna's mental health treatment and clinical status.

Please feel free to contact my office if additional information is needed.

Sincerely,
Dr. Bridgette L. Dilworth
Dr. Bridgette Dilworth, DPC.
Licensed Professional Counselor
78717

Texas Panhandle
CENTERS
Behavioral & Developmental Health
*Making Lives Better*

April 14, 2026

Re: Antonio Serna

To Whom It May Concern:

This letter is to verify that Antonio, is a current client of Texas Panhandle Centers and receiving services to address his psychiatric needs for his diagnosis of PTSD. Antonio has given consent to allow us to release this information to you. TPC has been assisting Antonio on and off again since 2023.

If you have any further questions, please feel free to contact his case manager, Chris Jones 806-674-5854 or our medical records at (806) 349-5698.

Sincerely,

Christian Jones BSW, CM, QMHP-CS
6600 Killgore Dr.
Amarillo, TX 79106
(806) 674-5854

Dr. Bridgette L. Dilworth, DPC, LPC-S
Geador Family Counseling Center, PLLC
1901 Medi Park Dr., Suite 100
Amarillo, Texas 79106

June 2, 2026

Honorable Judge Ed Kinkeade
United States District Court
Northern District of Texas
1100 Commerce Street
Dallas, Texas 75242

RE: United States v. Antonio Serna
Case No. 3:20-CR-00170-K(01)
Recommendation for Limited Extension for Combat PTSD Treatment and Medication Stabilization

Dear Judge Kinkeade:

I am writing on behalf of my patient, Mr. Antonio Serna, whom I continue to treat for military combat-related chronic Post-Traumatic Stress Disorder, commonly referred to as combat PTSD, along with related depressive and anxiety symptoms connected to his military service. I respectfully submit this letter in support of a limited extension of Mr. Serna's current self-surrender date so that he may reestablish PTSD medication management, continue trauma-focused therapy, and stabilize before entering Bureau of Prisons custody.

Mr. Serna has been engaged in ongoing trauma-focused psychotherapy under my care. His treatment has included individual therapy, cognitive behavioral interventions, trauma-focused coping strategies, relaxation and grounding techniques, and continued clinical monitoring of his PTSD symptoms. While Mr. Serna has made progress and has demonstrated willingness to engage in treatment, he remains clinically fragile and continues to experience significant combat PTSD symptoms.

In recent sessions, Mr. Serna has reported severe PTSD symptoms including frequent nightmares, difficulty falling and staying asleep, hypervigilance, flashbacks related to combat experiences, anxiety triggered by loud noises or crowded environments, and trauma-related visual hallucinations involving fallen soldiers. His symptoms have intensified during periods of increased stress and isolation. He has also presented with fatigue, anxiety, constricted affect, sleep disturbance, and impaired emotional regulation.

A significant clinical concern at this time is the interruption in Mr. Serna's PTSD medication management. Mr. Serna receives medication-management care through Texas Panhandle Centers / Texas Panhandle Mental Health Clinic in Amarillo, Texas, including care with Dr. Laura Settlage. Because of his current home-incarceration restrictions, he has not had regular access to in-person medication-management care in Amarillo. I understand that he received approval for

one limited trip to Amarillo for an in-person Texas Panhandle Centers case-management/records appointment, but that he has not had regular access to Amarillo for ongoing PTSD medication-management appointments.

In my clinical opinion, psychotherapy and psychiatric medication management are both important components of Mr. Serna's treatment plan for military combat-related chronic PTSD. The lack of consistent medication management has contributed to continued symptom severity and presents a meaningful risk of psychiatric destabilization if he enters custody before medication is restarted and monitored. A limited stabilization period would allow Mr. Serna to resume appropriate medication management, continue therapy, and transition into Bureau of Prisons custody in a safer and more clinically stable condition.

Mr. Serna has an appointment to see Dr. Laura Settlage at Texas Panhandle Centers / Texas Panhandle Mental Health Clinic for medication management. This appointment is clinically important because Mr. Serna needs to be evaluated and restarted on appropriate medication under medical supervision before entering custody. In my professional judgment, allowing Mr. Serna time to restart medication, monitor his response, and continue therapy would substantially reduce the risk of regression or destabilization and would support a safer and more stable transition into Bureau of Prisons custody.

I strongly recommend that Mr. Serna receive a limited extension of his self-surrender date so that he can attend his medication-management appointment, restart appropriate PTSD medication under medical supervision, continue therapy, and stabilize before surrender.

This recommendation is not made to avoid Mr. Serna's legal obligations. Rather, it is made as a clinical recommendation to support continuity of care, preserve the progress he has made in treatment, reduce the risk of psychiatric destabilization, and promote a safer transition into custody.

I respectfully recommend that the Court grant Mr. Serna a limited extension of ninety (90) days, or alternatively sixty (60) days or such period as the Court deems appropriate, to allow combat PTSD medication stabilization, continued therapy, and coordination of care before surrender.

I appreciate the Court's consideration and remain available to provide additional information if needed.

Respectfully,

Signed by:
Bridgette Dilworth
1B3AE55D7C7F421...

Dr. Bridgette L. Dilworth, DPC, LPC-S
Licensed Professional Counselor – Supervisor
Geador Family Counseling Center, PLLC

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**

**UNITED STATES OF AMERICA**
v.
**ANTONIO EDUARDO HUERTA SERNA**

**AFFIDAVIT OF CHALAN WYATT**
**REGARDING REQUEST TO FILE NOTICE OF APPEAL**

**STATE OF** TEXAS §
**COUNTY OF** FORT BEND §

BEFORE ME, the undersigned Notary Public, personally appeared **CHALAN WYATT**, who, after being duly sworn, stated as follows:

**1.** My name is **Chalan Wyatt.** I am over eighteen years of age, of sound mind, competent to make this affidavit, and have personal knowledge of the facts stated herein. The statements contained in this affidavit are true and correct based upon my personal knowledge and recollection.

**2.** I am a friend of Antonio Eduardo Huerta Serna ("Tony").

**3.** I was personally present at Tony's federal sentencing hearing in the United States District Court for the Northern District of Texas in **April 2025**.

**4.** Immediately after the sentencing hearing, I walked out of the courtroom along with Tony, his sisters, Mario, Emily, and others who had attended the sentencing. I remember that everyone was extremely emotional and in disbelief about what had occurred.

**5.** I specifically remember Emily crying. I was also emotional and remember wiping my own eyes with a Kleenex.

**6.** While we were gathered in the hallway outside the courtroom, I was initially approximately **ten feet away from Tony**.

**7.** I observed Tony's attorney come out of the courtroom. I then saw Tony take approximately two steps toward his attorney.

**8.** I observed Tony's attorney approach him and heard her ask Tony if she could speak with him.

**9.** Because I wanted to hear what Tony's attorney was going to say, I moved closer to Tony and his attorney. I was then approximately **five feet away from them**.

**10.**From that position, I personally heard Tony tell his attorney that **he was very disappointed about what had happened and that he wanted an appeal to be filed.**

**11.**I personally heard Tony's attorney respond that **she would take care of that appeal and that she would get back with him, and to consider it done.**

**12.** After this conversation, I observed Tony's attorney walk away.

**13.** Based upon what I personally witnessed and heard, Tony directly communicated to his attorney immediately following his sentencing that he wanted an appeal. I personally heard his attorney respond that she would take care of it.

**14.** After Tony's attorney walked away, I spoke with Tony. I remember telling him that I believed he needed to appeal and that I was glad he had told his attorney that he wanted an appeal.

**15.** I specifically remember this conversation because of the emotional circumstances immediately following the sentencing and because I deliberately moved closer to Tony and his attorney so that I could hear their conversation.

**16.** The statements contained in this affidavit concern events that I personally witnessed and words that I personally heard. I am not relying upon something Tony or anyone else later told me about this conversation.

**17.** No one has promised me anything, offered me anything of value, or pressured me to make this affidavit. I am providing this affidavit voluntarily and based upon my own recollection of what occurred.

**18.** I understand that this affidavit may be submitted to a United States District Court in connection with Tony's federal post-conviction proceedings.

**FURTHER AFFIANT SAYETH NOT.**

[signature]

**CHALAN WYATT, Affiant**

**NOTARY JURAT**

**STATE OF** TEXAS §
**COUNTY OF** FORT BEND §

SUBSCRIBED AND SWORN TO before me, the undersigned authority, on this 19th day of OCTOBER, 2026, by **Chalan Wyatt**, who personally appeared before me and, after being duly sworn, affirmed that the statements contained in the foregoing affidavit are true and correct to the best of the affiant's personal knowledge and recollection.

[signature]

**Notary Public, State of** TEXAS

Printed Name: ASLAM JAMAL

My Commission Expires: 07/06/2027

Notary ID/Commission No.: 130283780

**[NOTARY SEAL]**

ASLAM JAMAL
Notary Public, State Of Texas
Comm. Exp. 07-06-2027
Notary ID# 13028378-0

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**

**UNITED STATES OF AMERICA**
**v.**
**ANTONIO EDUARDO HUERTA SERNA**

**AFFIDAVIT OF JULIA DIAZ**
**REGARDING REQUEST TO FILE NOTICE OF APPEAL**

**STATE OF** Texas §
**COUNTY OF** Ellis §

**BEFORE ME,** the undersigned Notary Public, personally appeared **JULIA DIAZ**, who, after being duly sworn, stated as follows:

**1.** My name is **Julia Diaz**. I am over eighteen years of age, of sound mind, competent to make this affidavit, and have personal knowledge of the facts stated herein. The statements contained in this affidavit are true and correct based upon my personal knowledge and recollection.

**2.** Antonio Eduardo Huerta Serna ("Tony") is my brother.

**3.** I was personally present at Tony's federal sentencing hearing in the United States District Court for the Northern District of Texas in **April 2025**.

**4.** Immediately after the sentencing hearing ended and we walked out of the courtroom, I hugged Tony. I remember that I was very emotional and felt that I was about to begin crying because of what had occurred during the sentencing.

**5.** After hugging Tony, I stood on his **left side** in the hallway outside the courtroom.

**6.** While I was standing beside Tony, his attorney came out of the courtroom and approached Tony. I personally heard his attorney indicate that she wanted to speak with him.

**7.** Before his attorney could begin discussing anything with him, I personally heard Tony tell his attorney **that he wanted an appeal because he believed the way he had been treated inside the courtroom was unfair and because he had not been able to speak. He told his attorney that he wanted to appeal.**

**8.** I personally heard Tony's attorney respond that **she would file the appeal, that she would take care of it, and that she would get back with him.**

**9.** After that exchange, I observed Tony's attorney walk away.

**10.** Based upon what I personally witnessed and heard, Tony clearly told his attorney that he wanted an appeal. I also personally heard his attorney respond that she would file it and take care of it.

**11.** I specifically remember this conversation because I was standing immediately beside Tony on his left side. I had just hugged him and was emotional about what had happened during the sentencing when his


Scanned with CamScanner

attorney approached him and this conversation occurred.

12. The statements contained in this affidavit concern events that I personally witnessed and words that I personally heard. I am not relying upon something Tony or anyone else later told me about this conversation.

13. No one has promised me anything, offered me anything of value, or pressured me to make this affidavit. I am providing this affidavit voluntarily and based upon my own recollection of what occurred.

14. I understand that this affidavit may be submitted to a United States District Court in connection with Tony's federal post-conviction proceedings.

**FURTHER AFFIANT SAYETH NOT.**

______________________________
**JULIA DIAZ, Affiant**

**NOTARY JURAT**

**STATE OF** Texas §
**COUNTY OF** Ellis §

**SUBSCRIBED AND SWORN TO** before me, the undersigned authority, on this 20th day of October, 2026, by **Julia Diaz**, who personally appeared before me and, after being duly sworn, affirmed that the statements contained in the foregoing affidavit are true and correct to the best of the affiant's personal knowledge and recollection.

______________________________
Notary Public, State of Texas

Printed Name: Alice Aguilera

My Commission Expires: 12/17/2028

Notary ID/Commission No.: 132830329

[NOTARY SEAL]

ALICE AGUILERA
Notary ID #132830329
My Commission Expires
December 17, 2028



Scanned with CamScanner

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**

**UNITED STATES OF AMERICA**
**v.**
**ANTONIO EDUARDO HUERTA SERNA**

**AFFIDAVIT OF MARIA PENDERGRASS**
**REGARDING REQUEST TO FILE NOTICE OF APPEAL**

**STATE OF** Texas §
**COUNTY OF** Ellis §

BEFORE ME, the undersigned Notary Public, personally appeared **MARIA PENDERGRASS**, who, after being duly sworn, stated as follows:

1. My name is **Maria Pendergrass.** I am over eighteen years of age, of sound mind, competent to make this affidavit, and have personal knowledge of the facts stated herein. The statements contained in this affidavit are true and correct based upon my personal knowledge and recollection.

2. Antonio Eduardo Huerta Serna ("Tony") is my brother.

3. I was personally present at Tony's federal sentencing hearing in the United States District Court for the Northern District of Texas in **April 2025.**

4. I attended the sentencing with members of Tony's family and others who were there to support him.

5. Immediately following the sentencing hearing, we exited the courtroom and entered the hallway directly outside the courtroom. I specifically remember Tony's wife, Emily, standing beside me and crying because of what had just occurred at the sentencing.

6. While we were still in the hallway immediately outside the courtroom, I personally observed Tony speaking with his attorney.

7. I personally heard Tony tell his attorney that he **needed an appeal because what had happened was not fair and that he was not happy with the result of the sentencing.**

8. I then personally heard Tony's attorney respond that **she would take care of it, that she would file the appeal, and that she would get back with him.**

9. Based upon what I personally witnessed and heard, Tony clearly communicated to his attorney that he wanted an appeal filed concerning the result of his case. I personally heard his attorney respond that she would file the appeal.

10. This conversation occurred in my presence immediately after Tony's sentencing, while we were still outside the courtroom.



Scanned with CamScanner

11. I specifically remember this conversation because of the circumstances immediately following the sentencing, including Emily standing beside me crying and Tony speaking with his attorney in the hallway.

12. The statements in this affidavit are based upon what I personally saw and heard. I am not relying upon something Tony or anyone else later told me about the conversation.

13. No one has promised me anything, offered me anything of value, or pressured me to make this affidavit. I am making this affidavit voluntarily and based upon my own recollection of what occurred.

14. I understand that this affidavit may be submitted to a United States District Court in connection with Tony's federal post-conviction proceedings.

**FURTHER AFFIANT SAYETH NOT.**

[signature]

**MARIA PENDERGRASS, Affiant**

**NOTARY JURAT**

**STATE OF** Texas §
**COUNTY OF** Ellis §

**SUBSCRIBED AND SWORN TO** before me, the undersigned authority, on this 20th day of October, 2026, by **Maria Pendergrass**, who personally appeared before me and, after being duly sworn, affirmed that the statements contained in the foregoing affidavit are true and correct to the best of the affiant's personal knowledge and recollection.

[signature]

**Notary Public, State of** Texas

**Printed Name:** Alice Aguilera

**My Commission Expires:** 12/17/2028

**Notary ID/Commission No.:** 132830329

**[NOTARY SEAL]**

ALICE AGUILERA
Notary ID #132830329
My Commission Expires
December 17, 2028



Scanned with CamScanner